UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

K.D., by his guardian ad litem, J.B.,

          Plaintiff,

  v.

OAKLEY UNION ELEMENTARY SCHOOL DISTRICT, et al.,

          Defendants.

                                     /

No. C 07-00920 MHP

**MEMORANDUM & ORDER**
**Re: Plaintiff's Motion for a Preliminary Injunction and Defendants' Motion to Strike**

On February 24, 2007 plaintiff K.D., through his guardian ad litem J.B., brought this action against the Oakley Union Elementary School District ("OUESD" or "District"), the Board of Trustees of the OUESD (the "Board") and related officials (collectively "defendants") asserting violations of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), the Individuals with Disabilities Education Act ("IDEA") and certain California statutes. Now before the court is plaintiff's motion for a preliminary injunction and defendants' motion to strike. Having considered the parties' arguments fully and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

I.      Factual Background

Plaintiff K.D. is a fourteen year old boy with normal intellectual ability who has attention deficit hyperactivity disorder, learning disabilities, executive control deficits, and social skills and reasoning deficits. Currently, K.D.'s writing abilities are at the 3rd grade level and his mathematical abilities are at the 5th grade level.

K.D. transferred into the OUESD on March 30, 2006 into the 7th grade. The individual education plan ("IEP") in place when K.D. transferred did not call for transportation services. Loughrey Dec., Exh. T2. Upon transferring, K.D. was placed in an "Interim Special Ed Administrative Placement" based upon an IEP dated the same day, which did not provide for transportation services. Hussey Dec., Exh. A; see also Loughrey Dec., Exh. T1. Soon after K.D. began attending the Delta Vista school, he brought a knife to school and was suspended. Hussey Dec., Exh. D.[1] In a subsequent interview with the OUESD psychologist, K.D. admitted that he had brought the knife to school and had pointed it at another student. Id., Exh. E.[2] A manifestation determination meeting was then held to consider whether the conduct subject to discipline was related to K.D.'s disability or a result of the OUESD's failure to implement the operative IEP. At this meeting, the OUESD determined that K.D.'s behavior was neither. Id., Exh. F;[3] see also id., Exh. E. Concurrently, the OUESD: 1) developed an updated IEP that provided for five hours a week of in-home tutoring for K.D. until June 6, 2006, id., Exh. G; and 2) informed K.D. of his scheduled expulsion hearing, id., Exh. H. Subsequently, the Board voted to expel K.D. for the remainder of the seventh grade and the following two trimesters. Id., Exh. I.

On May 4, 2006, the day after the expulsion decision, the principal of Delta Vista School informed J.B. that K.D. was eligible to attend the county school at OUESD expense. J.B. Reply Dec., ¶ 13. No transportation services to the county school were offered. Id. Two weeks later, on or around May 16, 2006, the OUESD sent a referral form to the county school. Hussey Dec., Exh. J. J.B. met with the county school staff that same day. J.B. Reply Dec., ¶ 17. A month later, K.D. filed, then withdrew, a due process complaint with the Office of Administrative Hearings ("OAH") related to the manifestation hearing and expulsion. Id.; see also Hussey Dec., Exh. L. K.D. then failed to return to the county school on July 31, 2006 to continue the placement process. Hussey Dec., Exh. K.

On August 14, 2006, J.B. wrote to the OUESD requesting an independent educational evaluation ("IEE") for K.D. that included social/emotional, academic achievement, and intellectual development components. J.B. Reply Dec., Exh. C. In a separate letter written the same day, J.B.

also requested an evaluation that included occupational therapy and assistive technology components. Hussey Dec., Exh. M. Two weeks later, the District denied J.B.'s request for an IEE claiming the same was not warranted since a comprehensive educational evaluation of K.D. had yet to be conducted. Id., Exh. N. Concurrently, the District agreed to perform a comprehensive education evaluation with respect to all the requested areas and attached a consent form with its correspondence. Id. J.B. did not respond. By this time, however, K.D. had already been assessed by Dr. Grandison, a private doctor, who found K.D. had new ailments previously undiagnosed. See generally Grandison Dec. In fact, Dr. Grandison's assessment began August 9, 2006—before the IEE request to the OUESD was made. Id., Exh. A.

On September 19, 2006 the District reiterated their offer to evaluate K.D. and inquired about his enrollment status, stating that he may be considered truant if he was not receiving an appropriate education. Hussey Dec., Exh. O. A few days later, J.B. filed for a due process hearing with the OAH to challenge K.D.'s expulsion. Def.'s Request for Judicial Notice, Exh. A.[4] After completion of the OAH proceedings, the District again offered to assess K.D. while concurrently inquiring about his enrollment status, reminding J.B. of the county school as an option and warning her that K.D. could be considered truant if he was not enrolled in school. Hussey Dec., Exh. P; see also J.B. Reply Dec., Exh. D. J.B. then withdrew her request for the IEE and other assessments, Hussey Dec., Exh. Q, and expressed confusion regarding the District's letters because J.B. had accepted the District's offer of placement at the Marchus school, J.B. Reply Dec., Exh. E. The District responded, explaining that the Marchus placement was part of a confidential settlement offer, which was mooted by the OAH proceedings in the interim. Id., Exh. F. J.B. then wrote to the District stating the county school placement was inappropriate and vouched for the adequacy of the five hour per week education program she was providing K.D. Id., Exh. G.

On February 2, 2007 the District wrote J.B. asking her to request readmission in writing since K.D.'s expulsion was scheduled to end on February 23, 2007. Hussey Dec., Exh. S; see also J.B. Reply Dec., Exh. H. The letter stated that readmission procedures required K.D. to submit his academic regimen while he was expelled and to aver that he does not continue to pose a threat to

campus safety. Hussey Dec., Exh. S; see also J.B. Reply Dec., Exh. H.

On February 14, 2007, this action was filed. Subsequently, J.B.'s attorney requested a meeting with the District. Hussey Dec., Exh. T. The District responded, stating that K.D. was free to request readmission and that due to the passage of time, the District would have to conduct a comprehensive evaluation of K.D. before readmission. Id., Exh. U. The same day, J.B. refused to agree to the requested assessments. Id., Exh. V; see also Loughrey Dec., Exh. A1. This refusal occurred even though since 1997, K.D. has had an IEP made at least once a year and oftentimes multiple times a year. Hussey Dec., Exh. N. Subsequently, J.B.'s counsel wrote defendants stating that the District's "Readmission After Expulsion" policy did not require K.D. to submit his academic program while he was expelled, nor does the policy require K.D. to aver that he does not continue to pose a danger to campus safety. Loughrey Dec, Exh. C1; see also Benedetti Dec., Exh. B. Defendants responded stating that the academic information was necessary to determine where to place K.D. and that the averment was not required, but that the Board had the right to bar readmission if they found K.D. to be a continued threat. Loughrey Dec, Exh. D1.

On April 12, 2007 J.B. and counsel met with the District to discuss K.D.'s possible readmission into the District. At this meeting, the District represented that K.D. must be evaluated by the District regarding three readmission factors, whether: 1) K.D. and J.B. would conform to the District's conduct rules; 2) K.D. had completed the requirements of the District's rehabilitation plan; and 3) K.D. would pose a danger to himself or others if readmitted. Hussey Dec., Exh. X; see also Loughrey Dec., Exh's. F1, G1, I1. The second readmission factor was waived. K.D. requested readmission and submitted the necessary declarations. Hussey Dec., Exh. X; see also Loughrey Dec., Exh's. G1, I1. J.B. represented that during the expulsion, K.D. was: 1) tutored for two to three hours a week by a retired vice-principal; 2) tutored on a nightly basis by J.B.; 3) active in numerous church activities; and 4) tutored by the OUESD for five hours a week from May 2006 to June 2006. Hussey Dec., Exh. X; see also Loughrey Dec., Exh's. G1, I1. At the next Board meeting on May 2, 2007, the Board voted to readmit K.D. Loughrey Dec., Exh. J1.

On May 11, 2007 the principal of Delta Vista Middle School informed J.B. that K.D. was to

attend Delta Vista, in the OUESD, for approximately four weeks and then transition to Freedom High School in the Liberty Union High School District ("LUHSD"). Loughrey Dec., Exh. K1. The same day, a 30-day temporary IEP was put in place and a new IEP meeting was to be scheduled within 30 days. Id. A few days later, K.D.'s special education case manager informed J.B. of the need to schedule a transition IEP for high school. Hussey Dec., Exh. Y; see also Loughrey Dec., Exh. N1. Plaintiff then contended that an assessment was unnecessary and demanded an IEP meeting before K.D. returned to school. Loughrey Dec., Exh. M1. The IEP determination was scheduled for June 8, 2007, the day after classes ended at the OUESD.

On June 8, 2007, based in part on J.B.'s representations that K.D. was making adequate academic progress during his expulsion, Hussey Dec., ¶ 39,[5] and the school psychologist's view that the presence of non-disabled students who are older than their peers can lead to detrimental effects, id., Exh. Z, the District recommended that K.D. be placed in the ninth grade. K.D. wished to be placed in eighth grade in a special day class at the OUESD. Id., Exh. Z. Defendants considered this placement inappropriate because students in that program were younger and had much more severe needs than K.D. Id. Furthermore, they considered it inappropriate to retain K.D. in the eighth grade without a comprehensive reassessment. Id. J.B. continued to refuse an assessment and demanded that defendants rely upon Dr. Grandison's report, which, incidentally, did not require that K.D. remain in the eighth grade. Id. Defendants also allegedly threatened to bring truancy proceedings against K.D. for the 2006-07 school year if he insisted on an eighth grade placement. Loughrey Dec., Exh. P2. When discussion at the IEP meeting turned to K.D.'s placement in the ninth grade, J.B. and counsel left the meeting. Loughrey Dec., ¶ 18.

On July 18, 2007 defendants informed K.D. of a temporary placement from July 31, 2007 to October 15, 2007, during which time the District would reassess K.D. Hussey Dec., Exh. Z; see also Loughrey Dec., Exh. N1. This offer would place K.D. in the Odyssey program at Freedom High School, which provided for three hours of general education in a 24-student setting for incoming students at academic risk. After the morning program, K.D. would then be transported to Freedom High School for lunch and afternoon classes in physical education, an elective, tutorial support, and

English fundamentals. Hussey Dec., Exh. Z; see also Loughrey Dec., Exh. N1.

Between July and September 2007, the parties conducted unfruitful settlement negotiations before Magistrate Judge Spero.[6]

On October 1, 2007 plaintiff accused defendants of refusing to offer K.D. educational placement at any District school, at any nonpublic school or at home. Hussey Dec., Exh. AA; see also Loughrey Dec., Exh. R1. Ten days later, defendants responded, summarizing and renewing the Odyssey offer of June 8, 2007. Hussey Dec., Exh. BB; see also Loughrey Dec., Exh. S1; Benedetti Dec., Exh. D. A few days later, K.D. enrolled at Sand Paths Academy—a private school serving students from the sixth grade to the twelfth grade—and informed defendants that: 1) the June 8, 2007 educational offer was inappropriate; 2) K.D. had enrolled at Sand Paths; and 3) K.D. intended to seek reimbursement for this education. Loughrey Dec., Exh. V1. Defendants responded, stating that they were not responsible for K.D.'s placement as he was no longer a student of the OUESD. Id., Exh. W2. Thereafter, the LUHSD wrote J.B. that placement in the Odyssey program was still available.

K.D. now seeks a preliminary injunction to have defendants pay for his eighth grade education at the Sand Paths Academy for the 2007-08 school year.

II. Procedural Background

As stated above, on September 29, 2006 J.B. filed for a due process hearing with the OAH to challenge K.D.'s expulsion. Def.'s Request for Judicial Notice, Exh. A. The complaint set forth thirteen separate issues and the OAH bifurcated these issues into two hearing phases. Id., Exh. B.

The first phase dealt with two questions. First, whether the OUESD denied K.D. a free appropriate public education ("FAPE") by failing to allow his mother and mental health professionals to provide relevant information during the manifestation determination meeting on April 21, 2006; and second, whether the OUESD denied K.D. a FAPE by pre-determining that the conduct for which he was disciplined was not a manifestation of his disability prior to the manifestation determination meeting on April 21, 2006. Id.

The second phase was to deal with three questions, whether: 1) the OUESD denied K.D. a FAPE by failing to provide transportation services to his education program after he was expelled; 2) the OUESD denied K.D. a FAPE by failing to provide an appropriate interim alternate educational setting from April through June 2006 and by failing to provide an appropriate placement for the 2005-06 school year; and 3) Oakley, Pittsburgh, and Mt. Diablo denied K.D. a FAPE by failing to assess him in all areas of suspected disability and by failing to identify and provide educational services related to his specific learning disability to address his deficits in written expression, executive control, social reasoning and social skills. Id.

Prior to the phase one hearing, the hearing officer dismissed four issues raised by K.D. for lack of jurisdiction based on a finding that those issues involved alleged violations of state law and thus touched solely upon issues outside the scope of the IDEA. The hearing officer also denied as untimely a request by K.D. to amend his due process complaint to assert that the IEP team's finding on both prongs of the manifestation determination was in error. Id.

The phase one issues were heard on November 1 and 2, 2006 and on November 16, 2006 the hearing officer issued a decision favorable to the OUESD. Id., Exh. D. In the interim, K.D. dismissed the phase two issues. Id., Exh. C.

The instant action was originally brought by J.B. as K.D.'s guardian ad litem. Pursuant to a case management conference held on June 4, 2007, a corrected amended complaint was filed three days late on June 18, 2007. This amended complaint added a new plaintiff, J.B., as the parent of a child with disabilities. On July 5, 2007, instead of filing an answer, defendants filed a motion to strike the amended pleadings in their entirety, or alternatively, to seek a more definite statement, dismiss claims and strike improper matter.

LEGAL STANDARD

"A preliminary injunction is a provisional remedy, the purpose of which is to preserve status quo and to prevent irreparable loss of rights prior to final disposition of the litigation." Napa Valley Publ'g Co. v. City of Calistoga, 225 F. Supp. 2d 1176, 1180 (N.D. Cal. 2002) (Chen, Mag. J.) (citing

1  Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984)). Thus, a
2  plaintiff seeking preliminary injunctive relief must demonstrate either: "(1) a likelihood of success
3  on the merits and the possibility of irreparable injury; or (2) that serious questions going to the
4  merits [have been] raised and the balance of hardships tips sharply in [the plaintiff's] favor." Sw.
5  Voter Registration Educ. Project v. Shelley, 344 F.3d 914, 917 (9th Cir. 2003) (en banc) (per
6  curiam) (citing Clear Channel Outdoor Inc. v. City of Los Angeles, 340 F.3d 810, 813 (9th Cir.
7  2003)); see also Sun Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115, 1119 (9th Cir. 1999).
8  The components of these two tests, together with the added consideration of the public interest,
9  operate on a sliding scale or "continuum." Sw. Voter, 344 F.3d at 918. Consequently, "the less
10 certain the district court is of the likelihood of success on the merits, the more plaintiffs must
11 convince the district court that the public interest and balance of hardships tip in their favor." Id.;
12 see also Miller v. Cal. Pac. Med. Ctr., 19 F.3d 449, 456 (9th Cir. 1994) (en banc).

## DISCUSSION

I.  IDEA

Congress enacted the IDEA "to assure that all children with disabilities have available to them . . . a free appropriate public education which emphasizes special education and related services designed to meet their unique needs . . . ." 20 U.S.C. § 1400(c). The education to which access is provided must be "reasonably calculated to enable the child to receive educational benefits." Bd. of Educ. of Hendrick Hudson Central Sch. Dist., Westchester County v. Rowley, 458 U.S. 176, 207 (1982). To this end, IEPs are required for each disabled student. Id. § 1414(d); Cal. Educ. Code § 56344; see also Hacienda La Puente Unified Sch. Dist. v. Honig, 976 F.2d 487, 491 (9th Cir. 1992).

In addition to its substantive requirements, the IDEA provides procedural safeguards. Some violations of these procedural safeguards may prevent a child from receiving a FAPE. Among the most important procedural safeguards are those that protect parents' rights to be involved in the development of their child's IEP. Amanda J. v. Clark County Sch. Dist., 267 F.3d 877, 882 (9th Cir.

2001). In addition, parents have the right to "present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of [a FAPE] to such child." 20 U.S.C. § 1415(b)(1)(E). After making such a complaint, parents are entitled to "an impartial due process hearing . . . conducted by the State educational agency or by the local educational agency or an intermediate educational unit, as determined by State law or by the State educational agency." Id. § 1415(b)(2). The IDEA requires the child to remain in the interim alternate educational setting during the pendency of any appeal, or until the expiration of an expulsion, whichever occurs first. Id. § 1415(k)(4).

The IDEA provides that a party aggrieved by the findings and decision made in a state administrative due process hearing has the right to bring an original civil action in a state court of competent jurisdiction or in federal district court in order to secure review of the disputed findings and decision. See 20 U.S.C. § 1415(e)(2), (i)(2). The party challenging the decision bears the burden of persuasion on its claim. Clyde K. v. Puyallup Sch. Dist., No. 3, 35 F.3d 1396, 1399 (9th Cir. 1994). The statute provides "the court shall receive the records of the administrative proceedings; shall hear additional evidence at the request of a party; and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B).

Judicial review of state administrative proceedings under the IDEA is less deferential than the review of other agency actions. Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1471 (9th Cir. 1992). However, "[b]ecause Congress intended states to have the primary responsibility for formulating each individual child's education, [courts] must defer to their 'specialized knowledge and experience' by giving 'due weight' to the decisions of the states' administrative bodies." Amanda J. ex rel. Annette J. v. Clark County Sch. Dist., 267 F.3d 877, 888 (9th Cir. 2001) (quoting in part Rowley, 458 U.S. at 206–08). This review requires the district court to carefully consider the administrative agency's findings. Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 758 (3rd Cir. 1995). "The amount of deference accorded the hearing officer's findings increases where they are thorough and careful." Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995). After

such consideration, "the court is free to accept or reject the findings in part or in whole." Susan N., 70 F.3d at 758. When the court has before it all the evidence regarding the disputed issues, it may make a final judgment in what "is not a true summary judgment procedure [but] a bench trial based on a stipulated record." Ojai, 4 F.3d at 1472.

"Equitable considerations are relevant in fashioning relief" under the IDEA. Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 374 (1985). By nature, equitable relief is a fact-specific inquiry in which the Ninth Circuit had held that "the conduct of both parties must be reviewed to determine whether relief is appropriate." Parents of Student W. v. Puyallup Sch. Dist., No. 3, 31 F.3d 1489, 1496 (9th Cir. 1994) (internal citations omitted).

In the Ninth Circuit, parents have an equitable right to reimbursement for the cost of compensatory education where a school district has failed to provide a FAPE. W.G. v. Bd. of Trustees of Target Range Sch. Dist. No. 23, 960 F.2d 1479, 1485 (9th Cir. 1992). However, procedural violations under the IDEA do not necessarily result in the denial of a FAPE unless the violation results in the loss of an educational opportunity or seriously infringes upon the parent's opportunity to participate in the IEP process. Id. at 1484. And even if there is a denial of a FAPE, the remedy remains an equitable one. Id.

In 1997, Congress amended the IDEA to limit the circumstances in which parents who have unilaterally placed their child in a private school can seek reimbursement for that placement. Greenland Sch. Dist. v. Amy N., 358 F.3d 150, 157 (1st Cir. 2004). As amended, the IDEA does not "require a local education agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility." 20 U.S.C. § 1412(a)(1)(C)(i). To determine if K.D. is entitled to compensation, the court must address the availability of a FAPE to K.D.

Much of the above discussion and the relevant standard focuses on the court's power to review the state educational agency's decision. Here, the corrected first amended complaint demonstrates that only four decisions made by the OAH are on appeal. Specifically, whether the

hearing officer: 1) erroneously dismissed four state law issues due to a lack of jurisdiction; 2) erroneously denied plaintiff's request to amend; 3) made erroneous findings of fact and conclusions of law regarding the two specific issues related to K.D.'s manifestation determination; and 4) erroneously concluded that new issues raised during the hearing were untimely. These issues can easily be gleaned from the corrected first amended complaint and were succinctly stated in defendants' motion to dismiss.[7] As such, defendants' motion to dismiss based upon plaintiff's failure to distinguish between IDEA and non-IDEA claims is denied.

None of the other IDEA issues in the case, including what plaintiff characterizes as K.D.'s back-door expulsion during the June 8, 2007 IEP meeting, have been decided by the OAH. Moreover, plaintiff has not demonstrated that the OAH process would be futile with respect to these claims. Plaintiff's reliance on the outdated Cox v. Brown, 498 F. Supp. 823, 829 (D.D.C. 1980), is without avail because it is neither controlling nor does it bear any factual resemblance to the case at hand. In Cox, a school "appropriate to [the children's] needs" was "allegedly unavailable in Department's dependent school system." 498 F. Supp. at 824. The facts there were also far more egregious—defendants there had completely failed to perform annual assessments. Id. at 828. No such issues exist here. In fact, K.D. would like to be placed in the OUESD and J.B. has consistently thwarted the OUESD's attempts to assess K.D. Consequently, other than the four issues specified above, this court lacks subject matter jurisdiction to review defendants' actions in order to determine if an injunction should issue. 20 U.S.C. § 1415(f); Cal. Educ. Code § 56501(a). Thus, all IDEA claims that have not been vetted through the OAH process are dismissed.

Plaintiff argues that the OAH erroneously dismissed four state law issues due to a lack of jurisdiction. Without reaching the merits, this court holds that any error with respect to these issues does not warrant the relief sought by plaintiff. First, even if the court were to determine that the OAH incorrectly limited its own jurisdiction, the proper remedy would be to remand to the OAH to consider these issues. Second, the denial of these notices was substantially cured by the District's subsequent actions, thereby precluding the possibility that the violation resulted in the loss of an educational opportunity for K.D. For instance, the District's February 2, 2007 letter described what

11

K.D. and J.B. needed to do in order to seek re-enrollment in the District. Finally, the probability of being able to establish a causal connection between the denial of notices and harm justifying the desired remedy has not been demonstrated.

Furthermore, the OAH's denial of the request to amend and its failure to consider new issues during the hearing are both procedural issues which suffer from similar flaws as above. Neither the state law issues nor the procedural issues implicate the parents' right to be involved in the development of their child's IEP. Consequently, the proper remedy for those alleged procedural errors would be to provide the proper procedure, not tuition at Sand Paths Academy.

Finally, the substantive issues that were actually considered by the OAH were resolved in defendants' favor. Plaintiff merely states that the OAH decision was erroneous without any explanation or argument whatsoever. This does not address whether K.D. was denied a FAPE. Thus, giving that decision due deference, this court finds that plaintiff has demonstrated neither a clear nor reasonable probability of success.

In sum, plaintiff's motion for a preliminary injunction based upon the IDEA claims is denied.

II. Due Process claims

Education is a property right protected by the Due Process Clause of the Fourteenth Amendment. Gross v. Lopez, 419 U.S. 565, 574 (1975). Due process includes, at minimum, the right to be provided notice and an opportunity to be heard. Jones v. Flowers, 547 U.S. 220, 240–41 (2006). Plaintiff contends he was not provided with four notices as required by California law. Specifically, he was not provided notices regarding: 1) a date for readmission review following expulsion, per California Education Code section 48916(a)[8]; 2) his alternative educational placement, to be provided during the expulsion period per California Education Code section 48916(b); 3) a rehabilitation plan detailing the terms of readmittance into the District, per California Education Code section 48916(b); and 4) applicable admission process for readmission into the District following expulsion, per California Education Code section 48916(c).

As a baseline, the court notes that not every violation of a state procedural statute rises to the

level of a constitutional due process violation. <u>Gonzales v. McEuen</u>, 435 F. Supp. 460, 463 (C.D. Cal. 1977); <u>Winnick v. Manning</u>, 460 F.2d 545 (2d Cir. 1970). It goes without saying that it would be neither sound law nor desirable policy to constitutionalize every school board regulation. Plaintiff does not demonstrate how a violation of these state statutes has deprived him of notice and an opportunity to be heard. Here, even if there was a failure to provide any of these notices, each failure was cured or waived during the expulsion period. Therefore, plaintiff's sought-after remedy, a preliminary injunction, is unavailable.

California Education Code section 48916(a) states, in pertinent part:

> An expulsion order shall remain in effect until the governing board, in the manner prescribed in this article, orders the readmission of a pupil. . . . For a pupil who has been expelled pursuant to [how K.D. was expelled], the governing board shall set a date of one year from the date the expulsion occurred, when the pupil shall be reviewed for readmission to a school maintained by the district, except that the governing board may set an earlier date for readmission on a case-by-case basis.

The plain language of this statute does not require that plaintiff be notified of the date set by the governing board and therefore the court is unable to discern any statutory violations giving rise to a denial of due process. Nevertheless, plaintiff was notified on February 2, 2007 that his expulsion was scheduled to end on February 23, 2007. Even if a notification requirement is read into the above statute, the District's letter dated February 2, 2007, substantially meets the requirement above. Since the expulsion was scheduled to end, the Board would have to then review the applicant for readmission. Indeed, the February 2, 2007, letter was notifying plaintiff of the procedures necessary to initiate readmission. Finally, assuming arguendo that the above statute creates a federal right that was violated, none of plaintiff's arguments demonstrate how he was denied notice or an opportunity to be heard with respect to the review for readmission by the Board.

California Education Code section 48916(b) states:

> The governing board shall recommend a plan of rehabilitation for the pupil at the time of the expulsion order, which may include, but not be limited to, periodic review as well as assessment at the time of review for readmission. The plan may also include recommendations for improved academic performance, tutoring, special education assessments, job training, counseling, employment, community service, or other rehabilitative programs.

There is no argument that K.D. was informed of the county school placement when the expulsion

13

period began. This county school placement itself could itself be considered a rudimentary rehabilitation plan where further details were to provided when K.D. enrolled at the county school. Indeed, the District has presented evidence that K.D. was scheduled to attend an intake meeting at the county school on July 31, 2006, but neglected to do so. Furthermore, the statute makes no guarantees regarding the level of detail that must be provided in the rehabilitation plan. The Board could have concluded that placement at the county school would be rehabilitative enough. Finally, assuming arguendo that the rehabilitation plan does create a federal right and the same was violated, no prejudice stems from this deprivation. Reading the above section in combination with section (c) below, the rehabilitation plan was meant, in part, to aid the District when it made readmission decisions. Since the District waived adherence to the rehabilitation plan as a requirement for readmission, no prejudice inured to K.D.

California Education Code section 48916(c) states:

> The governing board of each school district shall adopt rules and regulations establishing a procedure for the filing and processing of requests for readmission and the process for the required review of all expelled pupils for readmission. Upon completion of the readmission process, the governing board shall readmit the pupil, unless the governing board makes a finding that the pupil has not met the conditions of the rehabilitation plan or continues to pose a danger to campus safety or to other pupils or employees of the school district. A description of the procedure shall be made available to the pupil and the pupil's parent or guardian at the time the expulsion order is entered.

There is no argument that the school neglected to provide K.D. with readmission procedures at the time of his expulsion. The District did, however, inform K.D. on February 2, 2007, of the procedures necessary to initiate readmission. Though this does not comport with the letter of the statute, which requires notification at the time the expulsion order is entered, the court is not able to discern any prejudice that K.D. has suffered as a result. The due process clause requires at minimum, notice and an opportunity to be heard. K.D. was given both, albeit he was given notice a few months late. This, however, did not impede upon his opportunity to be heard. This court does not consider a delayed notice, which led to no prejudicial effects and nevertheless allowed K.D. to be heard, to be a deprivation of due process of such magnitude that the District be required to pay for K.D.'s private placement.

In sum, plaintiff's motion for a preliminary injunction based upon alleged federal due process violations is denied. The deviations were minor ones that did not affect the fundamental fairness of any of the processes established by the regulations.

III.     Retaliation claims

Title II of the ADA, 42 U.S.C. § 12131, provides that: 1) people with disabilities shall not be excluded from participation in, nor be denied the benefits of an educational institution; and 2) a public entity may not provide a qualified person with a disability any aid, benefit or service that is inferior to that received by non-disabled persons. Similarly, Section 504 of the RA, 29 U.S.C. § 749 et seq., and the regulations promulgated thereunder, provide that no otherwise qualified individual with a disability shall, solely by reason of his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving federal financial assistance. It is illegal under the ADA and RA to coerce, intimidate, threaten, or interfere with any individual who exercises or helps another person to exercise, his or her rights provided under these disability civil rights statutes. See 42 U.S.C. § 12203(a), (b), (c); 34 C.F.R. § 104.61.

In order to establish a claim of retaliation under the ADA and the RA, a plaintiff must demonstrate by a preponderance of the evidence that: 1) he or she engaged in activity protected by the statute; 2) defendant engaged in conduct having an adverse impact on the plaintiff; and 3) the adverse action was causally related to the plaintiff's exercise of protected rights. If a prima facie case is made, the burden shifts to the defendant to demonstrate a legitimate, nondiscriminatory reason for its adverse action. After the defendant has made this showing, the plaintiff must then demonstrate the reason is a pretext for retaliation or intimidation. Henry v. Guest Services, Inc., 902 F. Supp. 245, 251 (D.D.C. 1995).

Assuming arguendo that K.D. has made a prima facie showing of discrimination, the District has provided a non-discriminatory rationale for its actions. During the expulsion, J.B. made representations that K.D. was being adequately tutored. As such, the District did not initiate truancy proceedings. Therefore, at the June 8, 2007 meeting, based in part on this representation, the

15

District decided to place K.D. in the ninth grade. Plaintiff has not demonstrated that this reasoning is pretextual.

Plaintiff further argues the denial of transportation was retaliatory. He presents no evidence except his and J.B.'s self-serving testimony to this effect. No documentary evidence has been presented. In fact, plaintiff voluntarily dismissed this issue when it was on appeal at the OAH. This is not enough for a prima facie showing.

Thus, it is unlikely that plaintiff will prevail on his retaliation claim.

IV. Irreparable harm

Plaintiff is correct that deprivation of educational services can constitute irreparable harm. See Van Scoy v. San Luis Coastal Unified Sch. Dist., 353 F. Supp. 2d 1083 (C.D. Cal. 2005). However, this harm is not irreparable if self-inflicted. K.D. could currently be in school at the LUHSD. K.D. will be in remedial studies whether he is in the eighth grade or the ninth grade since his last known abilities were at the fifth grade level. The court, therefore, is unconvinced that K.D. must be enrolled in the eighth grade. In fact, K.D.'s placement at Sand Paths exposes him to students from the sixth grade to the twelfth grade, similar to placement at the LUHSD. In addition, there is no evidence that the LUHSD has refused to enroll K.D. or to conduct an assessment and provide a permanent IEP upon K.D.'s enrollment. Indeed, the interim placement calls for an assessment within a short period of K.D.'s enrollment—there is no evidence that the LUHSD's permanent IEP would not place K.D. on the "success track," as recommended by Dr. Grandison. Thus, since the court is unconvinced that K.D.'s harm could not be avoided by enrolling at Freedom High School, K.D.'s harm is not irreparable. If K.D.'s permanent IEP at Freedom High School was deficient, then plaintiff's harm could have been irreparable. However, there is no evidence of this.

Plaintiff is also correct that a parent need not place a disabled child in an inappropriate educational program before enrolling the child in private school. See Bd. of Educ. of the City Sch. Dist. of the City of New York v. Tom F., 522 U.S. ___, 128 S. Ct. 1 (2007) (per curiam) (4-4 decision) (affirming Bd. of Educ. of the City Sch. Dist. of the City of New York v. Tom F., 193 Fed.

Appx. 26 (2d Cir. 2006)); Frank G. v. Bd. of Educ., 459 F.3d 356 (2d Cir. 2006). Again, however, plaintiff needs to first show the proffered educational program was inappropriate. In both the cases cited above, an inappropriate permanent IEP was in place when the parents privately placed their child. As stated above, no showing has been made that K.D.'s permanent IEP would have been inappropriate.

V. Public Interest

The public interest here includes both the integrity of the IDEA procedural safeguards as well as K.D.'s continued education. The IDEA safeguards require the district to create an IEP at least annually. 20 U.S.C. §§ 1401(8)(D), 1412(a)(1)(A), (a)(4), 1414(d); 34 C.F.R. § 300.346. Nevertheless, despite the District's numerous attempts, plaintiff has refused to allow the District to assess K.D. This is in spite of the fact that a new IEP had been put into place at least once a year since 1997. Furthermore, if the procedural safeguards were complied with, K.D.'s up-to-date IEP could also have been reviewed by an administrative law judge.

K.D.'s continuing academic progress substantially implicates the public interest. The maintenance of the procedural safeguards in place, however, serve all individuals affected by the IDEA. The cumulative impact of their integrity is therefore substantial. The court therefore finds that the interests do not substantially tip in either party's favor.

VI. Motion to Strike

As discussed above, defendants motion to strike the pleadings as non-responsive to the court order is denied.[9] Furthermore, defendants' motion to strike extraneous facts and legal argument in the corrected first amended complaint is also denied.

Defendants' suggestion that K.D. could have attached a copy of the OAH decision instead of summarizing the events in pages 26–39 of the corrected first amended complaint is simply puzzling—the issue seems to be solely with the format of the complaint. This court is unwilling to subject plaintiff to this obligatory exercise in redundancy. Furthermore, defendants' concern

17

regarding the inclusion of legal argument in the complaint is also unpersuasive. The arguments in the complaint only aid the defendants in anticipating counter-arguments when they move for summary judgment. Further, the court refuses to entertain argument over the minutiae of whether non-sequitur "sub-headings" ought to be stricken. Instead, this court urges defendants to concentrate on the merits of this litigation. The court hereby orders defendants to file an answer to the remaining IDEA issues raised in the corrected first amended complaint within twenty days of this order.

Plaintiff added J.B. as a named plaintiff in its amended complaint. J.B. has standing. Winkelman v. Parma City Sch. Dist, 127 S. Ct. 1994, 2006 (2007) ("Parents enjoy rights under IDEA; and they are, as a result, entitled to prosecute IDEA claims on their own behalf."). Defendants assert, however, that the statute of limitations with respect to J.B. has expired. Plaintiff claims Harper v. Virginia Dept. of Taxation, 509 U.S. 86 (1993), makes the rule retroactive. Harper does not help plaintiff since its retroactivity provision only applies to cases still open when a rule is decided by the Supreme Court. Id. at 97. J.B.'s case in her own capacity was not open when Winkelman was decided. Since no statute of limitations is present in the IDEA, the court must look to a parallel state law provision. Livingston Sch. Dist. Nos. 4 and 1 v. Keenan, 82 F.3d 912, 915 (9th Cir. 1996). The relevant state law provision is the California Education Code section 56505. See Ostby v. Oxnard Union High, 209 F. Supp. 2d 1035 (C.D. Cal. 2002). This section provides for a ninety-day statute of limitations for an appeal of the OAH decision. Cal. Educ. Code § 56505; see also Def.'s Request for Judicial Notice, Exh. D. Since more than ninety days have elapsed since the OAH decision, J.B.'s claim against the defendants is time-barred.

Finally, plaintiff has made no claims against the hearing officer. Thus, any request to dismiss such a claim is simply a waste of the court's time. If plaintiff wishes to make a claim against the hearing officer, he must do so in unequivocal terms.

VII. Request for a Special Master

This court is adequately prepared to handle the factual complexity of the issues involved.

The request for a special master is therefore denied.

CONCLUSION

For the foregoing reasons, defendants' motion to strike is DENIED and plaintiff's motion for a preliminary injunction is DENIED. Defendants are to file an answer to the remaining IDEA issues raised in plaintiff's first amended complaint within twenty days of this order.

IT IS SO ORDERED.

Dated: February 8, 2008

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

## **ENDNOTES**

1. Plaintiff's objections based upon a lack of foundation, hearsay and irrelevance are overruled. The court only considers the notice of suspension—admissible as a business record—since it has been properly authenticated by a declarant with personal knowledge. See Fed. R. Evid. 803(6).

2. Plaintiff's objections based upon a lack of authentication and hearsay are overruled. The court only considers K.D.'s admissions—which are not hearsay—during his interview with Scott Scwartz.

3. All of plaintiff's authentication and foundation objections with respect to documentary evidence submitted through Ms. Hussey's declaration are overruled since she claims personal knowledge and vouches for the documents' authenticity. Furthermore, objections based on relevance are overruled with respect to all evidence cited in this memorandum.

4. The court hereby takes judicial notice under Federal Rule of Evidence 201 of all four documents pertaining to the OAH's decision. See generally Def.'s Request for Judicial Notice.

5. A statement's purported falsity, when demonstrated through a competing declaration, is insufficient to sustain plaintiff's objection to the statement. Furthermore, statements made by a party to the action are admissions, not hearsay.

6. During these talks, the Liberty Union High School District ("LUHSD") allegedly demanded a hold harmless agreement as a precondition to attendance. Loughrey Dec., ¶ 22. Plaintiff claims this action, combined with defendants' earlier rejection of K.D. attending eighth grade within their District, left K.D. with no public schools willing to accept him. Id. These facts, however, are inadmissible as they may, at best, demonstrate the LUHSD's bias and prejudice but not the District's bias and prejudice. The court is seriously concerned about counsel's cavalier approach regarding confidential settlement discussions and strongly warns against repeating such behavior.

7. If plaintiff is appealing any other decision made by the OAH, it must state so clearly. Plaintiff's appeal is therefore currently limited to these four issues with respect to the OAH decision.

8. The court hereby takes judicial notice of sections related to the California Education Code as requested by plaintiff. See Fed. R. Evid. 201.

9. The court is very concerned about plaintiff's disregard for its order that the amended complaint be filed by Friday June 15, 2007. Though an amended complaint was filed on Saturday June 16, 2007, the operative corrected first amended complaint was not filed until Monday June 18, 2007. Furthermore, plaintiff has not been abiding by the page limitations set forth by the rules. Further disregard of the court's orders or rules will be met with sanctions.